UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MYRON GOLDEN,<br><br>    Plaintiff,<br><br>vs.<br><br>STEPEHN LARSEN; STEPHENLARSEN.BIZ, LLC, an Idaho limited liability company, and MYOFFERLAB, LLC, an Idaho limited liability company,<br><br>    Defendants. | Case No.: 1:22-cv-00173-REP<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Dkt. 31)** |

Pending before the Court is (i) Defendants Stephen Larsen, StephenLarsen.biz, LLC, and My OfferLab, LLC's Motion for Summary Judgment (Dkt. 31); and (ii) Plaintiff Myron Golden's Motion to Strike (Dkt. 34). Having carefully considered the record and participated in oral argument, the Court denies Defendants' Motion for Summary Judgment because there are genuine disputes of material fact surrounding the terms of the parties' underlying contract and associated damages. The Court therefore denies Plaintiff's related Motion to Strike as moot to the issues presented at summary judgment.

I. **BACKGROUND**

Plaintiff Myron Golden alleges that, in Spring 2019, he and Defendant Stephen Larsen entered into a contract wherein Golden agreed to assist Larsen in preparing for and presenting at an "OfferLab" marketing event in Tampa, Florida. Compl. at ¶ 9 (Dkt. 1). In consideration for Golden's contributions to the event, Larsen generally agreed to pay Golden a commission based on specified percentages of the sales collected both "pre-pitch" (25%) and "post-pitch" (40%). *Id*. at ¶ 13; *see also* Larsen Decl. at ¶¶ 2-5 (Dkt. 31-14).

**MEMORANDUM DECISION AND ORDER - 1**

Golden has experience in these types of events and is apparently a sought-after speaker on the topics of sales, marketing, business optimization strategies, and business growth. Compl. at ¶ 10 (Dkt. 1). His assistance in preparing for the event included drafting and editing forms, formulating pricing, and related activities. *Id*. at ¶ 11. Golden ultimately presented at the event on September 2 and 3, 2019. After the event, Golden hosted podcasts and webinars, and met with attendees (potential customers) who had attended the event. *Id*. at ¶ 12. Larsen initially estimated that the event produced $800,000 in sales and paid Golden his $249,000 commission based on that estimate. *Id*. at ¶ 14.

But through this action, Golden contends that Larsen received *more* than $800,000 in sales from the event. He alleges instead that there were actually between $1,700,000 and $1,875,000 in sales. *Id.* Golden thus maintains that Defendants significantly undercompensated him and brings a claim for breach of contract against them to recover the difference. *Id*. at ¶¶ 17-20. He further alleges that Larsen subsequently used footage of him from the event without his permission to generate additional sales. *Id*. at 15. Golden brings an additional claim of unjust enrichment based on these sales because Defendants never compensated him for the use of his likeness. *Id*. at ¶¶ 15-16, 21-24.

Defendants move for summary judgment on each of Golden's claims. They begin by questioning the terms of any agreement between Golden and Larsen before primarily arguing that there is no evidence that the event ever resulted in more than $800,000 in sales. Mem. ISO MSJ at 6-12 (Dkt. 31-1). Defendants point to their accountant's forensic analysis of the banking records to prove this point. *Id*. at 9.[1] Citing these records, and the fact that some sales were

---

[1] Golden moves to strike the accountant's declaration because it contains expert opinions that were neither disclosed by Defendants' March 17, 2023 expert disclosure deadline, nor in compliance with the Federal Rules of Civil Procedure's expert disclosure requirements. *See generally* Mot. to Strike (Dkt. 34).

**MEMORANDUM DECISION AND ORDER - 2**

never realized or had to be refunded, Defendants claim that Golden was overpaid by at least $32,844.17.  *Id*. at 11.  According to Defendants, because Golden was paid more than required under to the parties' agreement, there can be no breach of contract or any claim to damages.  *Id*. at 11-12.  Defendants correspondingly argue that Golden's unjust enrichment claim cannot stand because an agreement already controls Golden's compensation for the event and Golden was already (over)paid pursuant to that same agreement.  *Id*. at 12-14.

## II.  LEGAL STANDARD

"A grant of summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (citing *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1277 (9th Cir. 2017)).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine if there is evidence from which a "reasonable jury could return a verdict for the nonmoving party."  *Id.*  In assessing a motion for summary judgment, a court must view the evidence and reasonable inferences that may be drawn from it in the light most favorable to the non-moving party.  *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 432 (9th Cir. 2023).

The party moving for summary judgment "bears the burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact."  *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  If the moving party will bear the burden of proof on an issue at trial, "the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  *Soremekin v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Conversely, if the non-moving party will bear the burden of proof on an issue, the moving party can prevail by either "presenting evidence that negates an essential element of the non-moving

**MEMORANDUM DECISION AND ORDER - 3**

party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim." *Delamater v. Anytime Fitness, Inc.*, 722 F. Supp. 2d 1168, 1174 (E.D. Cal. 2010). "If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists." *Id.*

### III. DISCUSSION

Golden's theory of the case against Defendants is straightforward: (i) Larsen agreed to pay Golden a percentage of sales from the event; (ii) Larsen underrepresented the sales from the event and in turn underpaid Golden; and (iii) Larsen used unauthorized footage of Golden from the event to generate future sales without compensating Golden. Golden's breach of contract claim speaks to the money allegedly owed from the event itself, whereas his unjust enrichment claim relates to money allegedly owed from later events utilizing Golden's likeness.

Defendants seek summary judgment on each of these claims. They argue that Golden's breach of contract claim fails because (i) there was no contract between Golden and Larsen to begin with; (ii) even if there was, there was no breach because Golden was paid according to his own expectations; and (iii) damages from any breach are speculative. Mem. ISO MSJ at 5-12 (Dkt. 31-1). Defendants argue that Golden's unjust enrichment claim similarly fails because it was Golden who was unjustly enriched, not Defendants. *Id*. at 12-14. These arguments are resolved below.

    1.    <u>Golden's Breach of Contract Claim Survives</u>

Under Idaho law, the elements for a breach of contract claim are: (i) the existence of the contract; (ii) the breach of the contract; (iii) the breach caused damages; and (iv) the amount of those damages. *Mosell Equities, LLC v. Berryhill & Co.*, 297 P.3d 232, 241 (Idaho 2013). Defendants argue that they are entitled to summary judgment because Golden cannot establish

**MEMORANDUM DECISION AND ORDER - 4**

either the existence of a contract, that any supposed contract was ever breached, or the extent of any damages resulting from a breach. Mem. ISO MSJ at 5-12 (Dkt. 31-1). Defendants' arguments are not persuasive.

First, it cannot be said as a matter of law that there was no agreement between Golden and Larsen. Defendants' briefing acknowledges there was an agreement for Golden to assist with the event in exchange for a percentage of resultant sales. *Id*. at 7 ("While there was some form of an agreement to pay a percentage of the collected sales as compensation related to the generation of money at the event, . . . ."). Defendants' discovery responses confirm there was an agreement. Defs.' Resp. to Interrog. No. 2, attached as Ex. A to Points Decl. (Dkt. 33-2) ("In summary, the parties agreed to the following commission structure as it related to collected sales: . . . ."). And Larsen himself admitted there was an agreement. Larsen Decl. at ¶¶ 2, 5 (Dkt. 31-4) ("As a speaker, we agreed [Golden] would be entitled to a percentage of the sales collected from the event. . . . I do agree that [Golden] was entitled to commissions at the 25% pre-pitch sales that resulted and 40% of re-pitch sales that resulted from [Golden's] speech. That was the only agreement we made on his speaking at the event."). That this agreement may not have been reduced to writing does not matter. *See,* IDJI 6.06.1 ("A contract may be written or oral, or may contain both written terms and oral terms. So long as the required elements are present, it makes no difference whether the agreement is in writing.").

Moreover, Defendants' claim that no contract could have existed between Larsen and Golden "because there was no meeting of the minds" is no basis to dismiss Golden's breach of contract claim on summary judgment. Mem. ISO MSJ at 7-8 (Dkt. 31-1). "Generally, the determination of the existence of a sufficient meeting of the minds to form a contract is a question of fact to be determined by the trier of facts." *Vanderford Co., Inc. v. Knudson*, 249 P.3d 857, 865 (Idaho 2011). A contract's ambiguous terms likewise do not doom a breach of

**MEMORANDUM DECISION AND ORDER - 5**

contract claim on summary judgment. To the contrary, "summary judgment is appropriate only when the [ ] court finds the contract language unambiguous as a matter of law. If relevant terms are ambiguous, it is the finder of fact's role to determine the meaning of those ambiguous terms, and summary judgment must be denied if there are disputed issues of fact regarding the meaning of the ambiguous contact language." *Hap Taylor & Sons, Inc. v. Summerwind Partners, LLC*, 338 P.3d 1204, 1214 (Idaho 2014). Here, despite possible uncertainties in the exact agreement between Larsen and Golden, the fact remains that Larsen paid Golden $249,000 for his work at the event. Rhetorically speaking, why would Larsen pay Golden if there was no agreement to do so in the first place? Any questions further informing that issue are for the trier of fact to resolve, not the Court on summary judgment.

Second, given that Larsen agreed to pay Golden a percentage of sales from the event and did in fact pay Golden $249,000 based on Larsen's representation of $800,000 in sales, whether there was a breach of that agreement depends on the *true amount* of sales from the event. On this lynchpin issue, the parties disagree. Defendants state that bank records confirm they made only $540,389.57 and that, in hindsight, Golden was actually overpaid. Larsen Decl. at ¶¶ 6, 12, 15 (Dkt. 31-4). Golden responds that Larsen later touted making between $1,700,000 and $1,875,000. SODF at 3 (Dkt. 33-1) (citing Golden Depo at 9:24-10:7, 25:13-18, 29:13-22, 37:17-23, 43:21-44:1, 46:23-47:23, attached as Ex. A to Starnes Decl. (Dkt. 31-3)). Defendants argue that Larsen's representations of a higher sales amount are uncorroborated and do not automatically present a dispute of material fact to save his breach of contract claim from dismissal on summary judgment. Reply ISO MSJ at 4 (Dkt. 35). The Court disagrees.

Golden insists that Larsen repeatedly represented making more than $800,000 in sales from the event, including in a podcast, a YouTube video, and in a spreadsheet that Larsen gave

**MEMORANDUM DECISION AND ORDER - 6**

to Golden several weeks after the event. Golden testified to these circumstances, stating in relevant part:

> Q: All right. So what I'd like to start with is just a general overview. I think it always helps a little bit understanding where you're at and what your thought process is on this litigation.
>
> From your perspective, give me a summary of what you believe this lawsuit is about.
>
> A: Give you a summary of what I think this lawsuit is about? This lawsuit is about the fact that Steve Larsen and I had an agreement for which I would do some work for him in the form of a pre-pitch and re-pitch, and he would pay me a percentage of sales that were made of that.
>
> I would get paid a 25 percent commission on pre-pitch sales, which are sales that he did when he did his offer.
>
> I would get paid a 40 percent commission on sales that I made when I did my offer.
>
> *The information that I got from him was that when he did the pitch for which I did the pre-pitch, he did $800,000 in sales, 25 percent of that would be $200,000.*
>
> *The report that I got from him also was that he did – when I did the re-pitch, I did another $1,075,000 in sales, and I would get 40 percent of that, which I don't have that number in front of me right now, but I would get that.*
>
> *When he paid me, he paid me less than that.* He told me that he did not collect the money.
>
> . . . .
>
> Q: My question is when you say that something resulted from your pitches, what do you mean by that? What does that mean to you?
>
> A: Well, here's what I mean: When you do an event that you sell from the stage, a pre-pitch is nothing more than a presentation that happens before the offer is made.
>
> So I did a pre-pitch. So I did a presentation that was basically a pre-frame that would help more people decide to buy his offer when he made it. That's the pre-pitch.

**MEMORANDUM DECISION AND ORDER - 7**

> When he made his offer, *the report he gave me was that he did $800,000 in sales*.
>
> Then the re-pitch is all of the sales that come in after I do another presentation. After he already presented his offer, I do another presentation and submit his offer again and help the people that are on the fence get over the fence. And that's what the re-pitch sales are.

Q: Okay. And then what I'm trying to understand is – I get the percentages. How do you know if something happens as a result of the re-pitch?

A: I know because – how did I know in his case? *Because he told me. And he sent me a spreadsheet.*

. . . .

A: And we did $800,000 in sales from the pitch, another $1,075,000, which would be 1.87 -- $1,875,000. It says "1.75 million."

> *And I have video footage – so he told me – this was what this means. He told me he didn't collect all the money, but on another video he stated that he made – he did one-point – actually $1.8 million at that event on a video long after the event was over. He stated that that's how much we did in sales. That's what this is about.*

Q: And this video that you're referring to was to you or was to just –

A: No. *It was on – well, the first time I saw him say it was on a podcast interview that he did.*

> *Second time I saw him say it was on a YouTube video that he did, both of which were long after that event was over and long after he had already not paid me the money that we agreed to.*

. . . .

Q: Okay. All right. Now, you've talked a little bit about $800,000 in pre-pitch and then another – I think you said 1.8 or so –

A: $1,875,000. *These are numbers I got from him*.

Q: In what form did you get those numbers from him?

A: *In the form of a spreadsheet. First in the form of a conversation, then in the form of a spreadsheet.*

**MEMORANDUM DECISION AND ORDER - 8**

Golden Depo at 9:6-10:10, 25:6-26:6, 29:13-30:7, 37:14-23, attached as Ex. A to Starnes Decl. (Dkt. 31-3) (emphasis added); *see also* Excel spreadsheet from Larsen to Golden, titled "OfferLab Commissions (Myron)_October 20th 2019_stakeholder," attached as Ex. A to Supp. Points Decl. (Dkt. 42) (spreadsheet of payments and commissions for event). Critically, while Defendants dispute making more than $800,000 in sales from the event, they do not dispute that Larsen made statements suggesting that the event made significantly more.

This backdrop undercuts Defendants' argument that Golden's breach of contract claim is based upon "unsupported conjecture and conclusory statements." Reply ISO MSJ at 4 (Dkt. 35). It also distinguishes this action from *Jephson v. Ambuel*, 473 P.2d 932 (Idaho 1970), a case cited by Defendants to argue that Golden's recounting of Larsen's statements are insufficient to defeat summary judgment. Reply ISO MSJ at 4 (Dkt. 35).[2]

In *Jephson*, the Idaho Supreme Court held that a defendant/respondent's extrajudicial statements of fault concerning a motor vehicle accident, without more, were not enough to forestall the entry of summary judgment against the plaintiff. The Court reasoned:

> The two statements to Phillip Jordin by respondent to the effect that she was "at fault" were merely conclusions; they provide no factual particulars upon which a jury could predicate a finding of negligence. They indicated no acts or omissions on the part of the respondent which could be described as "negligent." A party is not bound by admissions of "fault" where there is no legal liability for actionable "fault" based on the evidence. The only inferences of negligence which could be drawn from these statement would have to be the product of pure speculation, and a judgment should not be allowed to rest on speculation and conjecture alone.
>
> The statement which respondent is reported to have made to Faye Jordin is also insufficient to take the appellant's case to jury. In response to appellant's aunt's query as to who had hit her nephew, respondent is alleged to have indicated that it had been she and that she, respondent, had not seen appellant. The first part of this statement simply states what is already known, that respondent's car hit appellant's

---

[2] The quotation attributed to *Jephson* in Defendants' brief is actually from a Washington Supreme Court case cited therein – *LaMoreaux v. Fosket*, 273 P.2d 795, 802 (Wash. 1954) – not *Jephson*. Regardless, *Jephson* cites to *LaMoreaux* as support for its decision so any technical discrepancy is immaterial here. *See Jephson*, 473 P.2d at 793.

**MEMORANDUM DECISION AND ORDER - 9**

> motorcycle. The second half of the statement is not corroborated by any circumstance established by independent evidence, and no other person has asserted that he heard the statement. It is, furthermore expressly contradicted by all other evidence in the case.

*Jephson*, 473 P.2d at 936. The same concerns over unsubstantiated extrajudicial statements are not present here.

Most notably, Larsen's statements about the event's sales are memorialized in a podcast, YouTube video, and a spreadsheet. They do not come from Golden alone and therefore do suffer from the same credibility worries that existed in *Jephson*. This likely explains why Defendants do not deny that Larsen made these statements.[3] Additionally, these statements do not address the ultimate issue of "breach" (like the issue of "fault" in *Jephson*). Rather, they supply additional factual context upon which a jury could resolve whether a breach took place. It is true that the bank records are indelible. Defendants are justified in invoking them to show actual earnings from the event. But those data points are not dispositive on the issue of breach where Larsen has made conflicting statements and where disputes of fact and all inferences are resolved in Golden's favor at this stage.

Third, despite Defendants' contrary argument, Golden's claimed damages are not speculative as a matter of law. *See* Mem. ISO MSJ at 11 (Dkt. 31-1) (Defendants arguing that Golden "fails to take damages out of the realm of speculation"). Damages (both causation and amount) must be proved with reasonable certainty. *Griffith v. Clear lakes Trout Co.*, 152 P.3d 604, 611 (Idaho 2007). "The reasonable certainty standard requires neither absolute assurance nor mathematical exactitude; rather, the evidence need only be sufficient to remove the existence of damages from the realm of speculation." *Id*. Here, *if* Defendants made more than $800,000

---

[3] At oral argument, Defendants argued that the statements amounted to puffery and/or were incomplete based upon eventual refunds. These are arguments imbedded with questions of fact that are to be resolved by the fact-finder, not the Court on summary judgment.

**MEMORANDUM DECISION AND ORDER - 10**

from the event, but never compensated Golden for sales above that amount, damages are directly calculable.  There is nothing speculative about the existence or amount of damages, depending on whether certain sales took place pre-pitch or re-pitch.  *See supra*; *see also* Opp. to MSJ at 4 (Dkt. 33) (calculating $630,000 in total commissions owed based on Larsen's representations).

Defendants point out that the only source of evidence for possible damages comes from their bank records (which do not substantiate Golden's claims).  Further, Defendants claim that Golden has no concrete evidence of lost profits as a result of Defendants' alleged breach.  Mem. ISO MSJ at 11 (Dkt. 31-1).  Defendants are free to make these arguments at trial.  But aside from Larsen's representations, Golden can only rely on what Defendants have produced thus far in discovery.  And his expert claims the figures Defendants have produced are irreconcilable and incomplete.  Opp. to MSJ at 4 (Dkt. 33).  In sum, owing to the specific nature of Golden's breach of contract claim, he has submitted sufficient evidence to take his damages claim outside the realm of speculation.

Because issues of fact surround the various elements of Golden's breach of contract claim, summary judgment is not warranted.  Defendants' Motion for Summary Judgment is denied in this respect.

2. Golden's Unjust Enrichment Claim Survives

"Unjust enrichment refers to the unjust receipt of something at the expense of another." *Neill v. Minnesota Life Ins. Co.*, 2011 WL 2182573, at *8 (D. Idaho June 3, 2011).  Under Idaho law, "[a] prima facie case of unjust enrichment consists of three elements: (1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such a benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof."  *Vanderford Co. v. Knudson*, 165 P.3d 261, 272 (Idaho 2007).  Defendants essentially argue that they were not

**MEMORANDUM DECISION AND ORDER - 11**

unjustly enriched because Golden was paid in accordance with the parties' agreement. Defendants misunderstand Golden's unjust enrichment claim.

It is true that, when parties enter into a contract, a claim based in equity is not allowed because the contract precludes enforcement of equitable claims. *Iron Eagle Dev., LLC v. Quality Design Sys., Inc.*, 65 P.3d 509, 514 (Idaho 2003); *see also Mannos v. Moss*, 155 P.3d 1166, 1173 (Idaho 2007) ("Unjust enrichment is an equitable claim, and equitable claims will not be considered when an adequate legal remedy is available."). But Golden's unjust enrichment claim is not tethered to his agreement with Defendants pertaining to the at-issue event; it relates to Larsen's unauthorized use of Golden's recorded pitches at subsequent events. No agreement between the parties addresses subsequent events. *See* Larsen Decl. at ¶ 9 (Dkt. 31-4). Therefore, the Court's consideration of Golden's breach of contract claim is immaterial to his unjust enrichment claim. Though tangentially related, they are independent claims – each involving a unique set of allegations, defenses, and damages, all to be resolved at trial.

Because Golden's unjust enrichment claim stands apart from his breach of contract claim, and because issues of fact surround the merits of that claim, summary judgment is not warranted. Defendants' Motion for Summary judgment is denied in this respect.

## IV.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED that (i) Defendants Stephen Larsen, StephenLarsen.biz, LLC, and My OfferLab, LLC's Motion for Summary Judgment (Dkt. 31) is

///

///

///

///

///

**MEMORANDUM DECISION AND ORDER - 12**

DENIED; and (ii) Plaintiff Myron Golden's Motion to Strike (Dkt. 34) is accordingly DENIED as moot.

DATED: October 30, 2023



_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 13**